No. 36,796,

HARRY BUTLER and THE SUNFLOWER BURIAL INSURANCE COMPANY, *Appellees,* v. LEONARD RUDE, JOHN B. SMITH, JOSEPH C. MEEK, as members, and J. L. COX as Secretary, of The State Board of Embalming, and THE STATE BOARD OF EMBALMING OF THE STATE OF KANSAS, *Appellants.*

(178 P. 2d 261)

Opinion filed March 8, 1947.

*Lester M. Goodell,* special assistant attorney general, and *Ralph F. Glenn,* of Topeka, argued the cause, and *Edward F. Arn,* attorney general, *Oscar*

*Raines, Wendell L. Garlinghouse* and *Warren W. Shaw,* all of Topeka, were with them on the briefs for the appellants.

*A. J. Herrod,* of Kansas City, and *Barton E. Griffith,* of Topeka, argued the cause and were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: The plaintiffs, who are hereafter referred to as Butler and the company, brought action against the members of the State Board of Embalming, hereafter referred to as the board, to enjoin the board from enforcing one of its rules, to enjoin it from adopting certain rules and for the construction of a statute. The board demurred to the petition, and that demurrer was overruled and an appeal to this court followed.

In view of the contentions made and hereafter discussed, the allegations of the petition may be stated summarily.

Butler is a licensed embalmer and funeral director and has a place of business in Kansas City, Kan., and has licensed funeral directors and embalmers in his employ. The company is a corporation under G. S. 1935, 40-801 *et seq.,* and authorized to solicit for and issue policies of burial insurance and a form of the policy it proposes to sell is attached as an exhibit. In 1945, the legislature enacted chapter 256 of the session laws, which now appears as G. S. 1945 Supp. 74-1707, and which reads as follows:

"The state board of embalming is hereby authorized and empowered to adopt and enforce rules and regulations relative to the selling and servicing of insurance or contracts of the burial or funeral benefit type and the collection of premiums and assessments thereon by embalmers, funeral directors, and assistant funeral directors, and to also adopt and enforce rules and regulations relative to prearranged funeral contracts made by or with embalmers, funeral directors and assistant funeral directors: *Provided,* That before any such rules or regulations are promulgated the same must be submitted to and approved by the state commissioner of insurance."

On October 8, 1945, the board adopted and caused to be published certain rules and regulations, and announced its intention of enforcing them. Copies of the rules are attached to the petition as an exhibit.

In a summary way it may be said that under the heading "Prefinanced Services Prohibited," prefinanced funerals are defined to be transactions made prior to death in which an embalmer or funeral director accepts a consideration in advance for a burial or funeral service and it is stated that such contracts have been found

to be unsatisfactory and impractical and are considered financially unsafe and unsound from the standpoint of the public and the embalmer and funeral director, and violate the ethics of the funeral profession, and that in the public interest no such contract shall hereafter be made, and that advertising for and soliciting such contracts are considered unethical practices and the solicitation of funeral business, and are prohibited. Under the heading "Insurance," is a long definition of contracts of the burial or funeral-benefit type, under which companies, for a consideration provide the members assured, or other designated person in case of death, with a funeral service, and it is stated that since the selling and servicing of such contracts result in unethical practices and undesirable conditions, attempt to control the placing of funeral business and destroy freedom of choice by the next of kin in the selection of a funeral director or embalmer, it is declared to be an unethical practice against the public interest and to constitute the solicitation of business, and no embalmer or funeral director or anyone connected with the funeral business shall, directly or indirectly, represent an insurance company selling burial insurance or permit his establishment or services to be used therefor.

The petition then alleges at length that Butler proposes, if legally entitled to do so, to represent the company and sell burial insurance, and to become a member and officer of the company or similar companies, and the company proposes to use Butler's services. Butler and the company deny that the sale of burial insurance contracts results in unethical acts and practices, and they also deny other conclusions stated in the rules mentioned. Similar allegations are made with reference to prefinanced funeral contracts. It is further alleged that plaintiffs are informed and believe that the board intends to enforce its rule and to revoke or refuse to renew the licenses of funeral directors and embalmers who participate in any way in consummating such contracts. Butler and the company further allege that the rule is invalid, unconstitutional and beyond the power of the board to legally adopt and enforce for ten separately stated reasons, included in which is that the rule is not an attempt to regulate the business of funeral directors or embalmers, but an absolute prohibition against the lawful right of a citizen to enter into business relationships with other persons. Other reasons will be noted later if need be.

The demurrer lodged against the above petition asserted three grounds: (1) Plaintiffs have no legal capacity to sue; (2) several causes of action are improperly joined; and (3) the petition does not state facts sufficient to constitute a cause of action.

This demurrer was submitted to the trial court on oral argument and briefs and thereafter the trial court overruled the demurrer and the appeal to this court followed. In our consideration of the appeal we follow generally the subject matter and order of presentation as contained in the appellant board's brief.

The board first contends that the action is prematurely brought, and in support it says there are no allegations that the board has taken any steps against plaintiffs, but only a mere allegation Butler is informed the board intends to enforce the rules; that there is no allegation the board has made a complaint or that the acts of Butler are contrary to the rule; that the court has no right to assume the board will act unlawfully in either the interpretation or enforcement of its rules, and that the court cannot anticipate such unlawful action and is without power to enjoin the board. In general support the board relies on *Bohl v. Teall,* 155 Kan. 505, 126 P. 2d 216. In that case it was held that administrative bodies may not be enjoined from discharging in a *lawful* manner the duties which the law imposes upon them (see syllabus ¶ 1), and in the opinion it was said that it is well settled that courts may not interfere with lawfully constituted administrative agencies in the lawful performance of their lawful duties, authorities in support being cited (l. c. 508). As we view the situation, a part of the board's premise is not correct. Butler is not challenging the board's authority to make a *rule* under the statute above quoted. What he challenges is the power of the board to make the *particular rule* it has made. The case is not one where an attempt is made to interfere with a lawfully constituted administrative agency in the lawful performance of its lawful duties, or to enjoin the making of the rule. The contention advanced by the pleading is that the rule adopted is not authorized by the statute and as adopted is an unlawful exercise of power. It is not necessary that we proceed in a negative way and discuss our many cases holding that attempt was being made to enjoin lawfully constituted administrative agencies in the lawful performance of their lawful duties. In a positive way we direct attention to the following cases, where on the facts relief was not always allowed, but where the rule was recognized that there are types of cases where actions may be

maintained. In *Silven v. Osage County,* 76 Kan. 687, 92 Pac. 604 (appeal from assessment), it was said that if the legislature should violate a constitutional limitation in the enactment of a tax law the judicial power of the courts might be invoked to determine its validity and prevent its enforcement. "And if the officers or agencies provided by the legislature for administering the tax laws were not proceeding in a legal manner their hands might be stayed by appropriate proceedings in the courts, . . ." (l. c. 689.)

*State, ex rel., v. Mohler,* 98 Kan. 465, 158 Pac. 408, was in mandamus to test validity of a statute. In discussing administrative power, it was said:

"The exercise of such power is merely the exercise of administrative discretion. If this power is abused, the courts are open to the aggrieved party, if not by some statutory review, then by the extraordinary and prerogative remedies of injunction or mandamus." (l. c. 472.)

In *Photo Play Corporation v. Board of Review,* 102 Kan. 356, 169 Pac. 1154, the action was one to compel approval of a motion picture by the defendant board. There was no claim of invalidity of the statute under which the board had refused approval, nor was there any allegation that the members of the board acted arbitrarily or in bad faith. In discussing the question of the right of the court to substitute its judgment for that of an administrative board it was said:

"If the board should act fraudulently, or so arbitrarily and capriciously as to amount to fraud, a resort to the courts may be had, and as against such action an aggrieved party may have redress." (l. c. 359.)

After referring to the two cases last mentioned, and making some comment, the court continued:

"In respect to the powers conferred on a municipal body it has been said that 'the courts have no supervisory power over the policy of municipal legislation. They can only interfere to curb action which is *ultra vires* because of some constitutional impediment or lack of antecedent legislative authority, or because the action is so arbitrary, capricious, unreasonable and subversive of private right as to indicate a clear abuse rather than a *bona fide* exercise of power.'" (l. c. 359.)

In support, nine of our cases are cited.

In *Capland v. Board of Dental Examiners,* 149 Kan. 352, 87 P. 2d 597, the action was one to enjoin the board's order revoking plaintiff's license. The right of plaintiff to maintain the action was not challenged as in the instant case, but an interesting and well sup-

ported discussion of the powers, duties and responsibilities of an administrative board may be found therein. It was held:

"While courts are not permitted to substitute their judgment for that of administrative bodies, they are definitely charged with the duty of determining whether the judgment rendered is unreasonable, arbitrary, oppressive, discriminatory or in excess of administrative powers." (Syl. ¶ 2.)

In our opinion, Butler was not compelled to await action by the board suspending his license, or refusing to issue or renew his license, in order to test the board's power to adopt the particular rule on the ground that the adoption of the particular rule was not authorized by statute.

The board further contends that if injunction is available at the proper time as a remedy to Butler and the company, the board cannot be enjoined at this time because statutes, other than G. S. 1945 Supp. 74-1707, quoted above, give the board original, exclusive jurisdiction to determine qualifications and standards of conduct of its licensees, and our attention is directed to the certain sections in G. S. 1945 Supp., all of which, however, were enacted prior to the section quoted above and as follows: 65-1711a which authorizes the board to refuse to issue or renew licenses of embalmers for (2) paying directly or indirectly any money or thing of value for the securing of business, (3) solicitation of business by agents or persons commonly known as "cappers" or "steerers," (6) unprofessional, unethical or dishonorable conduct, and to make rules and regulations defining, construing and interpreting the above grounds for suspension or revocation of licenses: 65-1722 and 65-1723 which make similar provisions with respect to funeral directors, and 74-1704 which gives the board power to make rules and regulations establishing ethical standards and practices. The board argues that even though the rule challenged may not be authorized or justified by 74-1707, it is authorized by the other sections mentioned. The contention as made cannot be sustained. The last act of the legislature was 74-1707, and in it the legislature dealt specifically with burial insurance contracts and prearranged funeral contracts. Under well-recognized rules of statutory construction this specific legislation controls rather than general legislation which might otherwise be applicable. The question presented is whether the rule complained of may be justified under 74-1707. Under that statute the board was authorized and empowered to adopt and enforce rules and regulations relative

to the two types of contracts and the allegation is that it duly adopted the rules of which complaint is made. The remedy of injunction was available to plaintiffs. In ruling on the demurrer the trial court had no occasion to determine the correctness of the plaintiffs' contention that the rule adopted by the board was not a regulation but a prohibition, and beyond the board's power and authority, and that phase we shall not discuss.

Under a third heading the board contends that the court may not usurp the fact-finding authority delegated to it by the legislature, and in support it cites *Bohl v. Teall,* supra; *Union Pac. Rld. Co. v. State Tax Comm.,* 145 Kan. 715, 68 P. 2d 1; *Murphy v. Hobbs,* 139 Kan. 799, 33 P. 2d 135; *Brinkley v. Hassig,* 130 Kan. 874, 289 Pac. 64, and other cases which it may be said support the contention. However, they do not control the present situation for, as has been observed, in dealing with the board's first contention, the challenge is not to the power of the board to make rules generally, nor an attempt to interfere with its enforcement of lawful rules lawfully made, but to test the board's authority and power to make the particular rule attacked.

The board also contends that no case or controversy exists upon which a declaratory judgment can be founded, and states that the petition is not in form one asking for a declaratory judgment, but that at the hearing in the district court the appellees had stated such a judgment was sought. It may be said that whether the allegations of the petition were sufficient or not, the appellees did pray for such relief. Our attention is directed to a number of our decisions treating of the declaratory judgment statute and its application, but we shall not review them. It seems quite clear the gist of the action is to enjoin the enforcement of an allegedly invalid rule and that the only questions of law involved or upon which the court could rule would be those implicit in determining the proposition of invalidity.

The board finally contends that the petition contains no allegation which discloses the company has any interest; that it is a burial insurance corporation and there is no allegation its rights will be infringed in any way, nor that if Butler does what he alleges he proposes to do, the interest of the company will be disturbed or changed in any way; that the company is not a licensee of the board, and the rule of the board does not prevent the company from carrying on its business with other agents who have no connection with the funeral

business, and that it is evident no cause of action in favor of the company is stated. It may be observed that both plaintiffs transact their separate businesses under authority granted by the state. Under the allegations the company proposes to sell a particular policy of insurance, and to have the services of Butler in so doing. We need not now examine the policy, a form of which is attached as an exhibit, to determine whether it is such a policy as the company is authorized to write, or a mere life insurance policy, but assuming it is a burial insurance policy, the effect of the rule is to stop its sale by embalmers and funeral directors, and to prevent its being used in connection with a prearranged or prefinanced funeral. If the rule stands, the company's interests will be affected. In such circumstance, we cannot say the company has no interest in the action.

In this opinion no attempt is made to treat each reason assigned in the petition that the rule complained of is invalid. If any reason presents a ground—and we hold the one discussed does—for asking injunctive relief, the demurrer was properly overruled. At a hearing on the merits the plaintiffs may or may not rely on all reasons stated. For us to discuss fully each reason assigned would, in a manner, result in our determining the merits of the action on a petition to which no answer has yet been made.

The trial court did not err in ruling on the demurrer, and its judgment thereon is affirmed.